Slip Op. 20-162

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INTERCONTINENTAL CHEMICALS, LLC,<br><br>                    Plaintiff,<br>v.<br><br>UNITED STATES,<br><br>                    Defendant. | Before: Timothy M. Reif, Judge<br><br>Court No. 20-00068 |

### OPINION

[Granting defendant's motion to dismiss for lack of subject matter jurisdiction.]

Dated: November 12, 2020

Matthew K. Nakachi, Junker & Nakachi, of San Francisco, CA for plaintiff.

Kelly Ann Krystyniak, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for defendant. With him on the brief were Ethan P. Davis, Acting Assistant Attorney General, and L. Misha Preheim, Assistant Director. Of counsel on the brief was Brandon Jerrold Custard, Trial Attorney.

    Reif, Judge:  Plaintiff Intercontinental Chemicals, LLC ("ICC" or "plaintiff") brings this action against the United States of America ("Government" or "defendant") to challenge the liquidation instructions issued by the Department of Commerce ("Commerce") with respect to imports of xanthan gum from the People's Republic of China ("China"). Complaint, ECF No. 2 ("Compl."). Defendant moves to dismiss under USCIT Rule 12(b)(1) for lack of subject matter jurisdiction and under USCIT Rule

12(b)(6) for failure to state a claim on which relief can be granted.  Def.'s Mot. to Dismiss, ECF No. 12 ("Def. Br.").

Upon review of the filings and applicable law, this Court grants the United States' motion to dismiss for lack of subject matter jurisdiction because 28 § 1581(i), not § 1581(c), provides the requisite jurisdictional basis to review plaintiff's claim.  The court does not reach the Rule 12(b)(6) motion to dismiss for failure to state a claim because dismissal under Rule 12(b)(1) renders the 12(b)(6) claim moot.[1]  "[A] court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim." *IMark Marketing Servs., LLC v. Geoplast S.p.A*, 753 F. Supp. 2d 141, 149 (D.D.C. 2010) (citation omitted).

## Subject Matter Jurisdiction

### BACKGROUND

On July 19, 2013, Commerce published an antidumping duty order on xanthan gum from China at a rate of 154.07%.  *See Xanthan Gum from the People's Republic of China*, 78 Fed. Reg. 43,143 (Dep't of Commerce July 19, 2013).  On July 5, 2016, Commerce issued a notice of opportunity to request an administrative review of that order for the period covering July 1, 2015 through June 30, 2016.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To*

---

[1] "A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 588 (S.D.N.Y. 2013) (quoting *Homefront Organization, Inc. v. Motz*, 570 F. Supp. 2d 398, 404 (E.D.N.Y. 2008) (internal quotation marks omitted)).

*Request Administrative Review*, 81 Fed. Reg. 43,584 (Dep't of Commerce Jul. 5, 2016). After receiving multiple requests for review, Commerce initiated its third administrative review of the xanthan gum from China antidumping duty order. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 62,720 (Dep't of Commerce Sept. 12, 2016). This administrative review is the subject of the present action.

Due to the large number of companies subject to the administrative review, in accordance with 19 U.S.C. § 1677f-1(c)(2)(B), Commerce selected Deosen Biochemical Ltd. and Deosen Biochemical (Ordos) Ltd. (collectively, Deosen) and Neimenggu Fufeng Biotechnologies Co., Ltd./Shandong Fufeng Fermentation Co., Ltd./Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively, Fufeng) as mandatory respondents. *See Xanthan Gum From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2015-2016*, 82 Fed. Reg. 36,746 (Dep't of Commerce Aug. 7, 2017).

Based on this review, Commerce calculated weighted-average dumping margins of 9.30 percent for Deosen, and zero percent for Fufeng. *Id.*, 82 Fed. Reg. at 36,747. These margins were unchanged in the Final Results. *See Xanthan Gum From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016*, 83 Fed. Reg. 6,513 (Dep't of Commerce Feb. 14, 2018) ("Final Results"). Commerce instructed Customs and Border Protection ("Customs") to liquidate entries not reported in the U.S. sales databases submitted by Doesen and Fufeng at the China-wide rate of 154.07%. *Final*

*Results*, 83 Fed. Reg. 6,513.

In accordance with the Final Results of the administrative review, Commerce issued non-public importer/customer-specific liquidation instructions to Customs, including instructions for Fufeng on March 2, 2018. Administrative Message No. 8061303 (Pl. Ex. 13). ICC had been inadvertently omitted from Fufeng's importer list, and thus was billed at the substantially higher, China-wide rate, rather than at the Fufeng-specific rate. After arbitration with Fufeng, through which ICC received partial compensation, ICC initiated this suit at the United States Court of International Trade ("USCIT"), invoking jurisdiction based on 28 U.S.C. § 1581(i)(4).

## STANDARD OF REVIEW

The Court's determination of subject matter jurisdiction is a threshold inquiry. *Steel Co. v. Citizens For A Better Envm't*, 523 U.S. 83, 94–95 (1998). When the requirements for subject matter jurisdiction are not satisfied, the court must dismiss the case for lack of jurisdiction. *Mittal Can., Inc. v. United States*, 30 CIT 154, 158, 414 F. Supp. 2d 1347, 1351 (2006). Whether to grant a motion to dismiss for lack of jurisdiction is a question of law. *JCM Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000).

When jurisdiction is challenged pursuant to Rule 12(b)(1), "'the burden rests on the plaintiff to prove that jurisdiction exists.'" *Pentax Corp. v. Robinson*, 125 F.3d 1457, 1462 (Fed. Cir. 1997), *modified, in part*, 135 F.3d 760 (Fed. Cir. 1998) (citation omitted). It is also the court's responsibility to review independently the jurisdiction claims that come before it. *J.S. Stone, Inc. v. United States*, 27 CIT 1688, 1691, 297 F.Supp.2d

1333, 1337 (2003), aff'd, 111 F. App'x 611 (Fed. Cir. 2004) (citing *Ad Hoc Comm. v. United States*, 22 CIT 901, 906, 25 F. Supp. 2d 352, 357 (1998)).  This principle is particularly true when a party invokes jurisdiction under § 1581(i).  *Consol. Bearings Co. v. United States*, 25 CIT 546, 549, 166 F. Supp. 2d 580, 583 (2001).

## LEGAL FRAMEWORK

When this Court asserts jurisdiction over an action, the Court must identify the claim on which plaintiff seeks relief.  *Mittal Can., Inc.*, 414 F. Supp. 2d at 1351.  "It is incumbent upon the Court to independently assess the jurisdictional basis for a case."  *Consol. Bearings Co. v. United States*, 166 F. Supp. 2d at 583.

Jurisdiction under § 1581(i) provides for the USCIT's "residual" jurisdiction, *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002), which allows this Court to "take jurisdiction over designated causes of action founded on other provisions of law."  *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992) (citation omitted).  It "may not be invoked when jurisdiction under another [sub]section of § 1581 is or could have been available, unless the relief provided under that other subsection would be manifestly inadequate."  *Consol. Bearings Co.*, 166 F. Supp. 2d at 583 (citing *Norcal/Crosetti Foods, Inc.*, 963 F.2d at 359).  If relief was available under any other subsection of 28 U.S.C. § 1581, then it is incumbent on the Court to dismiss the case for lack of subject matter jurisdiction.  *Mittal Can., Inc.*, 414 F. Supp. 2d at 1351.

# DISCUSSION

## I. Positions of the Parties

Plaintiff characterizes its suit as a case principally about Commerce's liquidation instructions, rather than Commerce's "Final Results" or Customs' implementation of the instructions. Compl. at ¶¶ 5–6. Plaintiff argues that the CIT lacks jurisdiction under § 1581(a) because the issue is not with Customs' implementation of Commerce's instructions, but with Commerce's instructions themselves. *Id.* at ¶ 5. Similarly, plaintiff maintains that the USCIT lacks jurisdiction under § 1581(c) because the challenge is not to the Final Results of an anti-dumping determination, but to the liquidation instructions — the "administration and enforcement" of an antidumping duty order. Therefore, plaintiff invokes the USCIT's residual jurisdiction under § 1581(i)(4) because, in plaintiff's view, no other grounds for jurisdiction exist. *Id.* at ¶¶ 4–5.

In support of its argument, plaintiff cites *J.S. Stone v. United States*, 27 CIT 1688, 297 F. Supp. 2d 1333 (2003), to show that jurisdiction under § 1581(i) is proper when an action challenging liquidation instructions is an action challenging the "administration and enforcement" rather than the Final Results themselves. Pl. Rep. at 2 (citing *J.S. Stone*, 297 F. Supp. 2d 1333). Plaintiff also argues that the CIT has found that jurisdiction under § 1581(i) is proper for cases in which Commerce's instructions contravene Commerce's administrative review determinations. Pl. Rep. at 3 (citing *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1305 (Fed. Cir. 2003) and *Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)). Based on this

framing of the issue, plaintiff concludes that the USCIT has residual jurisdiction under § 1581(i).

Defendant moves to dismiss for lack of subject matter jurisdiction, arguing that plaintiff, as an "interested party," could have participated in the administrative review or disputed the Final Results under § 1581(c), rendering relief under § 1581(i) unavailable. Def.'s Rep. in Supp. of Its Mot. to Dis., ECF No. 21 ("Def. Rep.") at 8 (citing *Consol. Bearings Co.*, 348 F.3d at 1000 ("Before final liquidation, any interested party may request an administrative review of the antidumping order."); 19 U.S.C. § 1677(9)(A) ("The term 'interested party' means a . . . United States importer of subject merchandise.")). Defendant argues that the "true nature" of ICC's challenge is a challenge to the Final Results, as the subject of plaintiff's dispute is the assessment rates determined by Commerce, not the liquidation instructions or their enforcement. Def. Rep. at 5. As ICC could have participated in the administrative review as an "interested party" and challenged the Final Results under § 1581(c), the CIT has no residual ability to hear a challenge under § 1581(i) because ICC "slept on its rights." Def. Rep. at 10.

## II.   Analysis

### A.   The Proper Jurisdictional Basis of Plaintiff's Claim

Whether this court has subject matter jurisdiction over a claim depends on a determination of the proper basis for jurisdiction. To determine that basis, the Court must identify the claim on which plaintiff seeks relief. *Mittal Can., Inc.*, 414 F. Supp. 2d at 1351. In this case, there are two potential sources of jurisdiction at issue: 28 U.S.C.

Court No. 20-00068																					Page 8

§ 1581(c) and (i).  As noted above, the possibility of jurisdiction arising under § 1581(c) precludes the application of § 1581(i), unless a remedy under § 1581(c) would have been manifestly inadequate.

        **1.**        **Jurisdiction under 28 U.S.C. § 1581(c) as compared with 28 U.S.C. § 1581(i)**

28 U.S.C. § 1581(c) provides the CIT with exclusive jurisdiction over actions brought under § 516A of the Tariff Act.  28 U.S.C. § 1581(c) (2000).  Section 516A provides for judicial review in countervailing duty and antidumping duty proceedings, and it specifically enumerates what the term "reviewable determinations" includes.  19 U.S.C. § 1516a(a)(2)(B) (2000); *Shinyei Corp. of Am.*, 355 F.3d at 1304.  Reviewable determinations include "Final Results" by Commerce.  *See id.*

On the other hand, 28 U.S.C. § 1581(i) serves as the "residual" jurisdiction provision of the statute and arises only in cases in which no other subsection of section 1581 is or would have been available.  Section 1581(i) may be invoked for challenges to the "administration and enforcement" of Commerce's Final Results including, for example, a challenge to inaccurate liquidation instructions.  *See Consol. Bearings Co.*, 348 F.3d at 1002 ("Consequently, an action challenging Commerce's liquidation instructions is not a challenge to the Final Results, but a challenge to the 'administration and enforcement' of those Final Results.  Thus, Consolidated challenges the manner in which Commerce administered the Final Results.  Section 1581(i)(4) grants jurisdiction to such an action.").

Jurisdiction arising under § 1581(c) or (i) in this case therefore depends on whether the dispute is about a final determination by Commerce or its liquidation instructions to Customs. *Consolidated Bearings,* 166 F. Supp. 2d 580, provides a helpful example of a challenge to liquidation instructions rather than to Final Results. In *Consolidated Bearings*, Commerce's liquidation instructions "'arbitrarily departed from its well-established liquidation practices' of determining the rate of dumping to be applied to imports at the liquidation instruction stage of an administrative review." *Wanxiang Am. Corp. v. United States*, 43 CIT __,__, 399 F. Supp. 3d 1323, 1332 (2019) (citing *Consolidated Bearings*, 166 F. Supp. 2d 580). The court in *Consolidated Bearings* found that because the liquidation instructions were not part of the Final Results or the Amended Final Results, the plaintiff could not invoke § 1581(c) jurisdiction. 166 F. Supp. at 583.

*Capella Sales & Servs. Ltd. v. United States*, 40 CIT __,__,180 F. Supp. 3d 1293 (2016), also provides an informative example in which a challenge to liquidation instructions presented this Court with multiple, possible bases for jurisdiction. In this case, "Capella thus does not challenge the calculation of the all-others CVD rate itself, but the way Commerce administers and enforces that CVD rate — specifically, Capella seeks a change in who [*sic*] is retroactively entitled to the benefit of the 'lawful rate' following redetermination." *Id.* at 1301. While plaintiff in *Capella* did not participate in the administrative review or challenge the Final Results — which ultimately impacted its ability to oppose a motion to dismiss for failure to state a claim — this failure to participate did not mandate dismissal under Rule 12(b)(1) because the action was a

challenge to the administration of Commerce's findings rather than to the findings themselves. *Id.*

A case in which the substance of the action is a challenge to the Final Results is *Wanxiang Am. Corp. v. United States*, 43 CIT __, __, 399 F. Supp. 3d 1323, 1332 (2019). In this case, Commerce issued a memorandum based on old questionnaires, which failed to list one exporter, and did not make new determinations. *Id.* at 1331. In other words, "Commerce's guidance to CBP was part of the same proceeding, and it reiterated —and rather than deviating [*sic*] from — the results of the administrative reviews from 1994 to 2001." *Id.* at n. 11. The court found that the plaintiff should have challenged the previous findings under § 1581(c); because plaintiff "forewent an available administrative procedure" and did not challenge the previous Final Results, jurisdiction could not arise under § 1581(i). *Id.* at 1332. The court in *Wanxiang Am. Corp.* looked to the original source of the error — the underlying administrative review — even though the error continued into the memorandum at issue. *See id.* ("Here, in challenging the [memo at issue's] conveyance of information from long-completed reviews, WAC is seeking a reconsideration of WQ's AD rate based on the records of those reviews. If WG wanted to challenge Commerce's finding with respect to WQ's antidumping rate, it should have done so by timely challenging the results of those administrative reviews under 28 U.S.C. § 1581(c).").[2]

---

[2] WAC and WQ were both subsidiaries of WG.

Another informative case discusses situations that require "a more searching examination because the parties disagree as to the characterization of Plaintiff's claim." *Mittal Canada, Inc. v. United States*, 30 CIT 154, 158, 414 F. Supp. 2d 1347, 1351 (2006). In *Mittal Canada, Inc.*, "Plaintiff contends it is challenging Commerce's liquidation instructions as arbitrary and capricious or otherwise not in accordance with law. Customs paints Plaintiff's request in a different light, arguing that Plaintiff is really seeking a substantive review of the changed circumstances review." *Id.* By "fashioning its dispute" in this way, the plaintiff "defined its claim such that the Court has jurisdiction." *Id.* at 1353. The court allows this refashioning of the dispute as a challenge to the liquidation instructions because the plaintiff's claim is about the meaning of the liquidation instructions. Indeed, the court states that the plaintiff is merely arguing that the "results mean something different from what they say." *Id.* The claim, though ultimately lacking in merit, truly is one about the liquidation instructions.

    **2.    CIT lacks jurisdiction under § 1581(i)**

Plaintiff's claim here is a challenge not to the administration and enforcement of Commerce's liquidation instructions, but to Commerce's Final Results, so the proper basis for jurisdiction is 28 U.S.C. § 1581(c), not 28 U.S.C. § 1581(i). Plaintiff attempts to characterize its claim as a challenge to the liquidation instructions, claiming that the instructions do not accurately reflect the results of the underlying administrative proceeding. Pl. Rep. at 7. Plaintiff argues that this characterization is proper because it does not want the Final Results changed — indeed, plaintiff claims, plaintiff would benefit from inclusion in the original analysis of the Final Results. *Id.* at 8. Plaintiff says

that because it is challenging the liquidation instructions and not the Final Results, it could not have raised its challenge under § 1581(c); indeed, the liquidation instructions were issued after the Final Results and therefore could not have been challenged under § 1581(c). *Id.* at 7.

Defendant, however, argues that because plaintiff was an "interested party" as defined by 19 U.S.C. § 1677(9)(A), plaintiff could have participated in Commerce's underlying administrative review and sought to correct the alleged error through participation in that proceeding instead. Def. Br. at 2. Defendant argues that plaintiff is asking the court to correct an error — the failure to include ICC in Fufeng's entry list — that could have been corrected through the administrative process. *Id*. at 6. Moreover, according to defendant, there is no inconsistency between Commerce's findings and Customs' administration and enforcement; Customs followed Commerce's instructions, which were based directly on the Final Results. *Id.* at 5. Therefore, § 1581(c) serves as the only valid basis for jurisdiction, leaving jurisdiction under § 1581(i)(4) foreclosed to plaintiff.

It is defendant's characterization of the dispute, not plaintiff's, that accurately reflects the substance of the claim in this action. The underlying issue in this case is an error in the record that influenced the Final Results of the administrative review: Fufeng's failure to include ICC in its list of importers. The underlying issue is not, as plaintiff argues, a discrepancy in the administration and enforcement, because Commerce's failure to include ICC in the list of importers could be traced back to Fufeng's original failure to include ICC on its entries list.

Court No. 20-00068                                                                                              Page 13

Here, as in *Wanxiang Am. Corp.*, *supra*, Commerce did not commit a new error. Rather, Commerce issued liquidation instructions based on the Final Results of an administrative review that failed to include what ICC would consider to be crucial information: its name on a list of importers. The Final Results instructed that "for entries that were not reported in the U.S. sales databases submitted by Deosen or Fufeng, Commerce will instruct CBP to liquidate such entries at the China-wide rate." Final Results, 83 Fed. Reg. at 6,514. ICC was "not reported in the U.S. sales databases submitted by . . . Fufeng." *Id.* As in *Wanxiang Am. Corp.*, ICC could have challenged Commerce's Final Results under § 1581(c); ICC could also have participated in the administrative proceeding. Because ICC failed to pursue either of these options, it is barred, as in *Wanxiang Am. Corp.*, from invoking jurisdiction under § 1581(i).

Moreover, as in *Mittal Canada, Inc.*, plaintiff here attempts to recharacterize the nature of its argument such that plaintiff can invoke § 1581(i) jurisdiction. However, this recharacterization does not accurately describe the situation in which plaintiff finds itself. Plaintiff argues that the issue is with the liquidation instructions, but these instructions are based — and not inconsistently — on the Final Results; the underlying issue is therefore not with the liquidation instructions but with the Final Results. Unlike in *Mittal Canada, Inc.*, plaintiff here fails to show that the substance of the claim is actually an error of administration and enforcement. Rather, the action is most accurately viewed as an error rooted in Fufeng's list of importers, a list that was incorporated into the Final Results and subsequently into the liquidation instructions.

This is a dispute about the Final Results, and as such, the only valid basis for jurisdiction lies under § 1581(c).  Therefore, a claim arising under § 1581(i) should be dismissed for lack of subject matter jurisdiction.  Moreover, this Court has previously held that a plaintiff should not be permitted to "expand a court's jurisdiction by creative pleading," as the plaintiff attempts here.  *See Norsk Hydro*, 472 F.3d at 1355.  Accordingly, this principle weighs in favor of dismissal here as well.

**B.     The Proper Basis for Jurisdiction: 28 U.S.C. § 1581(c)**

If plaintiff could have invoked 28 U.S.C. § 1581(c) but the remedy under this provision would have been manifestly inadequate, then jurisdiction under § 1581(i) would still be available.  *Consol. Bearings Co.*, 166 F. Supp. at 583.  That is not the case here, so § 1581(i) jurisdiction is not available.

Plaintiff bears the burden of demonstrating manifest inadequacy.  *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987).  Having not raised the issue of manifest inadequacy in its complaint, plaintiff argues in its reply that remedy under § 1581(c) would have been manifestly inadequate.  In raising manifest inadequacy, plaintiff asserts that: (1) it cannot change Fufeng's reported sales databases; (2) ICC did not have notice of the liquidation instructions because they were confidential and not published; (3) "{i}t would have been a 'fool's errand' to challenge a preordained conclusion, thus leaving the proper result as a challenge to the liquidation instructions, which must be targeted at those companies who did not purchase products from Fufeng"; and, (4) "ICC seeks to adjudicate an issue that is unresolvable in administrative proceedings because of its lack of control over what documentation may

be submitted to the reviewers by an exporter and Commerce's lack of diligence." Def. Rep. at 6-7 (citing Pl.'s Resp. to Mot. to Dis., ECF No. 20 ("Pl. Rep.") at 9-11).

Defendant argues here that plaintiff could have participated in the review as an importer of subject merchandise under 19 U.S.C. § 1677(9)(A), and that plaintiff could have commented on the information placed into the record by Fufeng, which forms the basis for this complaint. See *J.S. Stone*, 29 F. Supp. 2d at 1699 ("If an importer decides not to participate in an administrative review, it bears the risk that Commerce may err in calculating the dumping margin."). Plaintiff could also have filed suit under § 1581(c) to contest Commerce's Final Results. Either of these options would have addressed the underlying issue and provided plaintiff with the remedy that it seeks: inclusion on Fufeng's list of importers to receive a favorable liquidation rate.

"Neither the burden of participating in the administrative proceeding nor the business uncertainty caused by such a proceeding is sufficient to constitute manifest inadequacy." See *Valeo North America v. United States*, 41 CIT __,__, 277 F. Supp. 3d 1361, 1365 (2017). Further, "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *Miller & Co.*, 824 F.2d at 964. Here, plaintiff's claim of manifest inadequacy is not based on any of these theories, but rather on arguments derived from *NEC Corp. V. U.S. Dept. of Commerce*, 151 F.3d 1361 (Fed. Cir. 1998).

In *NEC Corp.*, the court found that the remedy under § 1581(c) would have been manifestly inadequate: "NEC [was] attempting to adjudicate an issue that [went] to the very heart of the administrative system — neutrality." *Id.* at 1369. In that case, the

plaintiff "could not invoke the trial court's § 1581(c) jurisdiction because the antidumping investigation had not yet been completed." *Id.* at 1368.  The government argued that "NEC should have waited until Commerce completed its review, and then raised its due process concerns." *Id.*  Describing the government's suggested approach as a "fool's errand," the court notes that "[r]equiring NEC to appeal from the conclusion of an investigation that, allegedly, was preordained because of impermissible prejudgment is a classic example of a remedy that was 'manifestly inadequate.'" *Id.*

      In the instant case, plaintiff's use of the phrase "fool's errand" is a clear reference to *NEC Corp.*, but plaintiff's arguments of manifest inadequacy are not convincing. Plaintiff states that it did not protest the Final Results under § 1581(c) because it would have been a "fool's errand" to challenge a "preordained conclusion" by Commerce, and that Commerce lacked due diligence in reaching its conclusion.  Pl. Rep. at 10. However, plaintiff does not present any evidence of this alleged unfairness, and thus fails to satisfy its burden of demonstrating manifest inadequacy.  Moreover, the harms that plaintiff suffered due to lack of inclusion on Fufeng's entries list are precisely the kind of harms that could have been remedied through participation in the underlying review or protest of the Final Results under § 1581(c).

## CONCLUSION

 "I prithee — and I'll pay thee bounteously —

Conceal me what I am, and be my aid

For such disguise as haply shall become

Court No. 20-00068 Page 17

The form of my intent."[3]

\* \* \*

Because this dispute is properly categorized as a challenge to the Final Results — which directly informed the liquidation instructions — and not a challenge to the accuracy of the liquidation instructions or their enforcement, plaintiff could have raised its issues as a challenge to the Final Results under § 1581(c).  Plaintiff's claim is a challenge to Commerce's Final Results, and not to the liquidation instructions.  A challenge to the Final Results would have formed a valid basis for jurisdiction and any remedy under § 1581(c) would not have been manifestly inadequate.  Therefore, jurisdiction based on § 1581(i) is foreclosed.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated: November 12, 2020
New York, New York

---

[3] William Shakespeare, TWELFTH NIGHT, act 1, sc. 2.